## FLORIDA BEACHES et al. v. NIAGARA INV. CO. et al.

### No. 11107.

Circuit Court of Appeals, Fifth Circuit.
April 21, 1945.

Thomas B. Adams, of Jacksonville, Fla., and Gus C. Edwards, of Cocoa, Fla., for appellants.

Russell Snow, of Cocoa, Fla., for appellees.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

The United States condemned a tract of land in Brevard County, Florida, containing 48 acres and known as parcel 15–B. The compensation money as fixed by a trial is deposited in the district court. The court has the duty and the jurisdiction to pay it to the proper persons "as shall be just and equitable". 40 U.S.C.A. § 258a. The money is claimed on the one hand by Niagara Investment Co., a Florida corporation, as assignee of a title to the land acquired under a foreclosure of tax liens in 1938 in a State court; and on the other hand by Florida Beaches, and others representing a dissolved Florida corporation

of the same name, who assert a mortgage on the land antedating the tax foreclosure which they say was not cut off by the foreclosure because the foreclosure was void for want of statutory service and fraud; or if the foreclosure is valid, then that they have a trust interest, or a right to a title or a right to redeem, because of a contract, made by the purchaser at the foreclosure sale, which Florida Beaches and its representative in due time had offered to carry out; Niagara Investment Company not being an innocent purchaser for value but having taken with knowledge of and subject to the contract. There are more than a hundred pages of pleadings and exhibits thereto about these equitable contentions.

The district court found that the tax foreclosure proceeding was known to Florida Beaches through its president, and that an attorney at law was employed to represent it in the case. The attorney at first deposited the necessary money in the State court to stop the foreclosure, but later withdrew it on an understanding between the attorney and the plaintiff that the title should be cleared by a sale, and acquired by the plaintiff, and that on payment of a stated sum in a reasonable time the title to the six tracts involved, tract 15–B being one, would be conveyed to Florida Beaches. Two tracts were later in fact conveyed. The evidence fully sustains these findings.

It is in sharp conflict, or at least great uncertainty, as to whether this understanding, or offer, was bindingly accepted by the attorney's client, and whether or not certain attorney's fees to plaintiff which were also to be paid were agreed to and payment provided for in addition to the principal sum. The trial judge found that the contract proposed by the plaintiff to the attorney of Florida Beaches was not approved or agreed to by his client and that no offer to pay in a reasonable time was made, and that there was laches in doing nothing till the United States had made the land more valuable by taking it in October, 1940. But he further held that the tax foreclosure and the alleged equity to redeem notwithstanding .it, and the contract for a conveyance of the title acquired by the foreclosure, involved three other tracts of land besides this tract 15–B, over which the court had no jurisdiction, and that it was not possible in this case to ad- just these equities and grant the relief sought by Florida Beaches.

█ The foreclosure was regular on its face. If there was a defect in the published notice it was cured by the president and owner of Florida Beaches receiving actual notice and employing counsel who, though not formally appearing, assisted in having the sale perfected. Florida Beaches is in no position to attack the validity of the foreclosure and sale. Its rights, if any, arise out of the agreement it claims to have had through its attorney with the plaintiff in the foreclosure, in pursuance of which the deposit of the redemption money was withdrawn from the State court so the foreclosure sale to plaintiff could be confirmed, and in pursuance of which it asserts two of the six tracts involved were conveyed to the nominee of Florida Beaches, and in further pursuance of which it claims that a proper offer was made to purchase or redeem the remaining four lots, including tract 15–B.

█ In the trial judge's final conclusion we concur. The legal title passed by the confirmed tax forecloure sale to the grantor of Niagara Investment Co., and the prior legal mortgage of Florida Beaches was extinguished. If Florida Beaches or those who represent it had a valid contract to acquire title, or under the circumstances had an equity to redeem from the sale, it involves the other tracts along with this one, for a lump sum, and needs the aid of a court of equity for its establishment and enforcement. The relief would relate not simply to tract 15–B, but to the entire contract. We do not doubt that in distributing the funds in a condemnation proceeding the district court can recognize not only the legal title but also plain equities in the property condemned, but we think it is going too far for it to undertake specific performance of a contract and an adjustment of equities about other lands also, between corporations of the same State over whose controversies it would not have original jurisdiction. The most it ought to do would be to keep the fund safe, if that is shown to be necessary, till the parties can protect their rights in it elsewhere. It appears in this record that there are already pending in a State court equitable proceedings between these parties where this can be done.

█ We accordingly affirm the decision of the district court that the legal title to

the fund in controversy is in Niagara Investment Company, and that it be paid over to it, but without prejudice to an assertion in another court of any equitable rights appellants may have in it by reason of the disputed contract above referred to. With this qualification the judgment is affirmed.